C. H. LITTLE V. H. D. DENNIS ET AL.

No. A-473. Decided April 11, 1945.
Rehearing overruled May 16, 1945.
(187 S. W., 2d Series, 76)

*C. O. McMillan,* of Stephenville, and *Turner & Seaberry,* of Eastland, for petitioner.

The Court of Civil Appeals erred in holding that the deed signed by the Attorney General was a nullity, and that the interest acquired in the land by petitioner was for the benefit of himself and the respondents, as the uncontradicted evidence showed that petitioner acquired his title to an undivided interest by a subsequent separate deed, in another and different transaction, in which respondent did not participate. Allison v. Harrison 137 Texas 582, 156 S. W. (2d) 137; MacDonald v. Follett, 142 Texas 616, 180 S. W. (2d) 334; Dwyer v. Rippetoe, 72 Texas 520, 534, 10 S. W. 668; 14 Am. Jur., 22.

*Chas. Nordyke, J. A. Johnson* and *R. L. Thompson,* all of Stephenville, for respondents.

MR. JUSTICE SHARP delivered the opinion of the Court.

C. H. Little filed this suit against H. D. Dennis and others in trespass to try title to 947 acres of land, wherein certain parties intervened as defendants. Based upon the findings of the jury, the trial court gave judgment in favor of C. H. Little for the recovery of the 947 acres of land, except an undivided 74 4/5 acres awarded to H. D. Dennis and an undivided 74 4/5 acres

awarded to D. O. Dennis. The defendants and intervenors appealed to the Court of Civil Appeals, and the judgment of the trial court was reversed in part and judgment rendered against C. H. Little and remanded in part. 184 S. W. (2d) 516.

This case presents three questions:

(1) Does the law authorize the State to sell at private sale before the two-year redemption period and six months additional land purchased by it at a sheriff's foreclosure sale for the amount of taxes, penalties, interest, and costs?

(2) If the State can sell such land at private sale before the expiration of the redemption period, what person is authorized to execute the instrument of conveyance?

(3) What interests do petitioner and the other parties have in this land?

The record shows that at a tax lien foreclosure the land under consideration was conveyed by the Sheriff of Erath County to the State by deed dated May 7, 1940, reciting payment of $1,845.13 as the consideration therefor. By deed dated August 16, 1941, petitioner acquired the undivided interest of D. L. Dennis. Thereafter on or about November 10, 1941, within the two-year redemption period, C. H. Little paid to the State the sum at that time required to redeem said land, in the amount of $2,965.09. In consideration of the sum paid by C. H. Little, a purported conveyance from the State was executed, in the nature of a quitclaim deed, and it recites that it was made in the name of the State, "acting by and through Jim Fincher, the tax collector of Erath County." The instrument was signed by the Attorney General, but he in no way joined in the deed as grantor.

■ It appears that the deed from the Tax Collector, and signed and acknowledged by the Attorney General, was made under the authority of Article 4403, Vernon's Annotated Civil Statutes. An examination of Article 4394 et seq., including Article 4403, will disclose that they do not relate to tax foreclosure suits. They refer to entirely different matters, and prescribe the duties of the Attorney General in certain matters and actions in which the State may be interested, and provide for the sale of certain property by the State in certain proceedings. The Attorney General is authorized by Article 4403 to execute deeds to property acquired by the State by virtue of executions or orders of sale issued upon judgments, or by virtue of deeds of trust, in order to protect the State's interest in the collection of judg-

ments and debts, as prescribed in the preceding article. Article 4403 reads as follows:

"The agent or attorney of the State buying for the State such property at such sales shall be authorized by and with the advice and consent of the Attorney General, at any time to sell or otherwise dispose of said property so purchased in the manner acquired and upon such terms and conditions as he may deem most advantageous to the State. If sold or disposed of for a greater amount than is necessary to pay off the amount due upon the judgment or debt, and all costs accrued thereon, the remainder shall be paid into the State Treasury to the credit of the general revenue. When such sale is made, the Attorney General shall, in the name of the State, execute and deliver to the purchaser a deed of conveyance to said property, which deed shall vest all the rights and title to the same in the purchaser thereof." Acts 1879, S. S., pp: 9-10, sec. 3; G. L. vol. 9, p. 41; Acts 1927, 40th Leg., p. 361, ch. 243, sec 1.

Petitioner owned no interest in this land at the time of the tax sale by the sheriff to the State on May 7, 1940. He acquired an interest therein after such sale from D. L. Dennis, and on or about November 10, 1941, he acquired the land from the Tax Collector and the Attorney General as above described.

Article 7345b provides in detail the rules governing the filing of suits for delinquent taxes by the State of Texas or any town, city, or county in said State, or any corporation or district organized under the laws of the State with authority to levy and collect taxes. Section 9 thereof provides how the purchasing taxing unit shall hold the property for itself and other taxing units adjudged to have liens against the property, how sale by such purchasing taxing unit shall be made, and how the proceeds from such sale shall be distributed. It also provides the method to be pursued if the sale of such land has not been made by the purchasing taxing unit within six months after the redemption period provided for in Section 12 of the Act.

■ The judgment was in favor of the State of Texas and Erath County for the sum of $1,783.23, being the amount of taxes, etc. sued for. The judgment was in a lump sum and did not show the amount due the State and the amount due Erath County. The Sheriff of Erath County conveyed the land to the State, reciting payment of $1,845.13 in consideration therefor. In the judgment it does not appear that any other taxing unit as provided for in Section 9 of Article 7345b, was adjudged to have an interest in the judgment foreclosing the taxes due on

the land in favor of the State and County. No provision has been made for the execution of a deed to the purchaser where the State is the taxing unit making the sale as provided for, except when the sheriff makes a sale under the provisions of either Article 7328 or Article 7345b. Unless the sheriff can sell property under the authority given him under Article 7328, or unless some other taxing unit interested in the judgment rendered in the suit requests the sheriff to sell same under the provisions of Section 9 of Article 7345b, there is no authority given the State to sell property which it has purchased at a tax sale. Whether such property is sold under the provisions of Article 7328 or under the provisions of Section 9 of Article 7345b, the sheriff is the only person authorized to execute a deed conveying such property to the purchaser thereof at such sale. Here the State is the taxing unit that purchased the land at the foreclosure sale, and the provisions of Section 9 of Article 7345b do not apply. Therefore the provisions of Article 7328 control. The sheriff did not execute the deed to petitioner. It was made by the Tax Collector and signed and acknowledged by the Attorney General, as above indicated.

Article 7328 in part reads:

"* * * If any of the land thus sold to the State is not redeemed within the time prescribed by this law, the sheriff shall sell the same at public outcry to the highest bidder for cash at the principal entrance to the court house in the county wherein the land lies, after giving notice of sale in the manner now prescribed for sale of real estate under execution, provided when notice is given by posting notices, one of the said notices shall be posted in a conspicuous place upon the land to be sold. Said notice shall contain a legal description of the land to be sold; the date of its purchase by the State, the price for which the land was sold to the State; that it will be sold at public outcry to the highest bidder for cash, date and place of sale. All sales contemplated herein shall be made in the manner prescribed for the sale of real estate under execution, and the sheriff is hereby authorized, and it is hereby made his duty to reject any and all bids for said land when in his judgment the amount bid is insufficient or inadequate, and in event said bid or bids are rejected the land shall be re-advertised and offered for sale as provided herein, but the acceptance by the sheriff of the bid shall be conclusive and binding on the question of the sufficiency of the bid, and no action shall be sustained in any court of this State to set aside said sale on grounds of the insufficiency of the amount bid and eccepted. * * * The sheriff, in behalf of the

State, shall execute a deed conveying title to said property when sold and paid for."

In 1932 Section 13 of Article VIII of the Constitution was adopted, which provides that the former owner of land sold for taxes due thereon shall within two years from the date of the filing for record of the purchaser's deed have the right to redeem the land on a prescribed basis. Thereafter the Legislature enacted Section 12 of Article 7345b, which reads:

"Sec. 12. In all suits heretofore or hereafter filed to collect delinquent taxes against property, judgment in said suit shall provide for issuance of writ of possession within twenty (20) days after the period of redemption shall have expired to the purchase at foreclosure sale or his assigns; but whenever land is sold under judgment in such suit for taxes, the owner of such property, or anyone having an interest therein, or their heirs, assigns or legal representatives, may, within two (2) years from the date of such sale, have the right to redeem said property on the following basis, to-wit: (1) within the first year of the redemption period, upon the payment of the amount bid for the property by the purchaser at such sale, including a One ($1.00) Dollar tax deed recording fee and all taxes, penalties, interest and costs thereafter paid thereon, plus twenty-five per cent (25%) of the aggregate total; (2) within the last year of the redemption period, upon the payment of the amount bid for the property by the purchaser at such sale, including a One ($1.00) Dollar tax deed recording fee and all taxes, penalties, interest and costs thereafter paid thereon, plus fifty per cent (50%) of the aggregate total.

"In addition to redeeming direct from the purchaser as aforesaid, redemption may also be made upon the basis hereinabove defined, as provided in Articles 7284 and 7285 of the Revised Civil Statutes of Texas of 1925."

It appears that the Attorney General, in an opinion dated March 26, 1940, No. 0-1939, quoting with approval from opinion No. 950, ruled: (1) That a taxing unit purchasing land at a tax sale may, before the period of redemption has expired, sell, convey, or assign at private sale its right to receive the redemption money from the owner, together with the title which will vest upon failure to redeem within the statutory period; (2) that the right to receive the redemption money should be conveyed by a quitclaim deed containing an assignment clause whereby the grantee is specifically assigned the right to collect

the money from the owner and to issue to him a receipt, but the owner would have the right to demand and receive some evidence in writing that he had redeemed his land within the time and manner provided by law; (3) that the sheriff has nothing whatever to do with any kind of a private sale, whether made before or after the period of redemption has expired, and that sales made by the sheriff would not be private but public sales.

It was also held in that opinion that while Article 7345b did not authorize the Attorney General to sign the deed, such authority could be found in Article 4403. The Attorney General in a later opinion, dated September 2, 1943, No. O-5056A, addressed to the County Attorney of Erath County, overruled the opinion dated March 26, 1940, No. O-1939, and held that Article 4403 did not apply, and that a sale of land, either before or after the period of redemption, could not be made at private sale.

■ Article 7328 plainly provides how and when land that has been acquired by the State through tax foreclosure proceedings shall be sold. It nowhere provides that such land can be sold at private sale, either before or after the redemption period. We therefore hold: (1) That such land can not be sold by the State at private sale, either before or after the redemption period; (2) that the Tax Collector and the Attorney General were not authorized to execute the deed conveying the land under consideration to petitioner; and (3) that petitioner did not acquire title to such land by virtue of such conveyance.

■ This case was tried on the theory that the conveyance from the Tax Collector and the Attorney General to petitioner was valid. The Court of Civil Appeals assumed for the purpose of its opinion that such deed was valid. This theory was incorrect. However, it is undisputed that petitioner acquired a certain interest in this land from D. L. Dennis before the expiration of the period of redemption. This gave him the right to redeem this land. Article 7284b and Section 12 of Article 7345b, Vernon's Annotated Civil Statutes; Jackson v. Maddox et al, 53 Texas Civ. App. 478, 117 S. W. 185; Buckholtz et al v. Alsup et al, 56 S. W. (2d) 301 (writ refused); 40 Tex. Jur., p. 273, sec. 202.

■ It is also undisputed that petitioner paid the State the sum necessary to redeem the land, and that since then he has paid certain taxes due on said land. Petitioner is entitled to recover from the other parties interested in this land their prorata

share of the sum of money paid by him to redeem this land from the State, and also their prorata share of the taxes paid by him since that time.

Since the case was tried on the wrong theory, the pleadings do not reflect all the facts relating to the interest owned by each of the parties interested in the land in controversy. Under the state of this record, this Court does not know what interests or claims the parties may have in this land, or what claims or equities they may have against one another relating to this land. Therefore this case is reversed and remanded to the trial court so that the rights and equities of all parties interested in this land may be property adjudicated.

The judgments of the Court of Civil Appeals and trial court are both reversed, and this cause is remanded to the trial court for further proceedings consistent with this opinion.

Opinion delivered April 11, 1945.

Rehearing overruled May 16, 1945.